# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00003-CV

**Appellants, T. Mark Anderson and Christine Anderson, Co-Executors of the Estate of Ted Anderson// Cross-Appellants, David B. Archer, Carol Archer Bugg, John V. Archer, Karen Archer Ball, and Sherri Archer**

**v.**

**Appellees, David B. Archer, Carol Archer Bugg, John V. Archer, Karen Archer Ball, and Sherri Archer// Cross-Appellees, T. Mark Anderson and Christine Anderson, Co-Executors of the Estate of Ted Anderson**

## FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
## NO. D-1-GN-07-002328
## THE HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is a dispute over fees and costs incurred in a post-judgment receivership. Following reversal of the judgment in the underlying tort case, the district court dissolved the receivership and issued an order requiring each side to pay approximately half of the fees and costs associated with it. We will affirm the district court's order.

These cross-appeals arise out of a longstanding dispute between the heirs of John R. Archer and Ted Anderson. The parties are David B. Archer, Carol Archer Bugg, John V. Archer, Karen Archer Ball, and Sherri Archer (the Archers), and T. Mark Anderson and Christine Anderson, co-executors of the estate of Ted Anderson (the Andersons). In 2007, the Archers sued Ted Anderson's estate for tortious interference with inheritance rights. A jury found for the Archers, and the district court rendered judgment awarding the Archers over two million dollars in damages. Both parties appealed.

While the appeals were pending, the Andersons moved to supersede the judgment. The district court concluded the Andersons failed to disclose over a million dollars in estate assets and denied the motion. Shortly afterward, the district court signed a turnover order and appointed a receiver to sell the estate's assets to satisfy the judgment. *See* Tex. Civ. Prac. & Rem. Code § 31.002(b) (authorizing courts to grant turnover relief and appoint receiver on judgment creditor's motion). The receiver's fees and expenses were payable out of the estate as court costs, and the Andersons would bear all other expenses associated with the receivership. Additionally, the district court awarded the Archers $173,338.96 in attorney's fees. *See id.* § 31.002(e) ("The judgment creditor is entitled to recover reasonable costs, including attorney's fees.").

While the underlying tort case was on appeal, the district court:

---

[1] The Texas Supreme Court's opinion sets out the underlying facts and procedural history. *See Archer v. Anderson*, 556 S.W.3d 228, 229–30 (Tex. 2018). We repeat them here only to the extent necessary to explain the context of the dispute before us.

- granted the Archers' motion to sanction T. Mark Anderson (Mark). Mark was ordered to pay $5,000 in attorney's fees and be personally responsible for 50% of all future receivership costs;

- modified the turnover order and ordered Mark to pay the Archers an additional $39,922.75 in attorney's fees; and

- issued monthly orders approving the receiver's requests for fees and expenses, which totaled $58,697.64. Each order required Mark to pay half the sum and the estate the remainder.

Meanwhile, this Court reversed and rendered judgment that the Archers take nothing on their tort claim, *Anderson v. Archer*, 490 S.W.3d 175, 176 (Tex. App.—Austin 2016), and the Texas Supreme Court affirmed, *Archer v. Anderson*, 556 S.W.3d 228, 230 (Tex. 2018). The Texas Supreme Court's mandate issued in October 2018. Two months later, the Andersons wrote to the district clerk asking her to issue a new bill of cost taxing all fees and costs related to the receivership against the Archers. In response, the Archers filed a "Motion to Determine Costs of Court" asking the district court to confirm that the Andersons are responsible for all costs associated with the receivership, including the attorney's fees award.[2] The Andersons filed a motion to dissolve the receivership.

After considering both motions at an evidentiary hearing, the district court granted the Andersons' motion to dissolve the receivership and discharged the receiver. In a separate order issued a few days later, the district court granted the Archers' motion to determine costs in part and denied it in part. The court found that, of the monies requested by the Andersons, $274,039.81 were "cost[s] of court associated with the receivership" and ordered each side to be responsible for half, i.e., $137,020. Both sides appeal from this order.

---

[2] The Andersons also asked the clerk to tax the Archers with the costs the Andersons incurred in their appeal to this Court and the Texas Supreme Court, which the Archers do not challenge on appeal here.

**DISCUSSION**

The Andersons contend the district court erred by ordering the Archers to pay less than the entire disputed sum. In a cross-appeal, the Archers argue that the district court erred to the extent it required them to pay any of the costs associated with the receivership.

**Court Costs**

A receiver's fees and expenses "are considered court costs and are governed by rules regarding the award of costs." *Hill v. Hill*, 460 S.W.3d 751, 767 (Tex. App.—Dallas 2015, pet. denied). Those rules provide that the trial court is responsible for adjudicating which party or parties will pay costs. *Diggs v. VSM Fin., L.L.C.*, 482 S.W.3d 672, 674 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Once the trial court has made its decision, the clerk has a ministerial duty to tax costs. *Campbell v. Wilder*, 487 S.W.3d 146, 152 (Tex. 2016).

Generally, the prevailing party is entitled to recover from its adversary all costs incurred in the suit. *See* Tex. R. Civ. P. 131. However, the trial court may order otherwise "for good cause, to be stated on the record." *See id.* R. 141. The rules of appellate procedure contain similar provisions for the court of appeals and the Texas Supreme Court. The judgment of the court of appeals "should award to the prevailing party costs incurred by that party related to the appeal," but "[t]he court of appeals may tax costs otherwise as required by law or for good cause." Tex. R. App. P. 43.4. The appellate court clerk then taxes those costs against "the party or parties against whom costs have been adjudged." *See id.* R. 51.1(a). The Texas Supreme Court follows essentially the same procedure. *See id.* R. 60.4 (providing that Supreme Court's "judgment will award to the prevailing party the costs incurred by that party in the Supreme

4

Court" but may adjudge costs otherwise "as required by law or for good cause"); 65.1 (directing that court's clerk to issue statement of costs taxing costs as adjudged by the court).

**The Andersons' Appeal**

The Andersons contend the district court violated the Texas Supreme Court's mandate by awarding them only half the costs they allegedly recovered on appeal. Specifically, they argue this Court awarded the disputed costs to the Andersons in our judgment, which the Texas Supreme Court affirmed.

When an appellate court renders the judgment the trial court should have rendered, that judgment becomes the judgment of both courts. *See Cook v. Cameron*, 733 S.W.2d 137, 139 (Tex. 1987); *Scott Pelley P.C. v. Wynne*, 578 S.W.3d 694, 699 (Tex. App.—Dallas 2019, no pet.). After an appellate court's opinion and judgment issue, the clerk issues the mandate. *See* Tex. R. App. P. 18.1 (governing issuance of mandate). "A mandate is an appellate court's formal command requiring the lower court to comply with the appellate court's judgment." *Scott Pelley P.C.*, 578 S.W.3d at 699. Upon receiving a mandate, the trial court has a ministerial duty to enforce the appellate court's judgment. *Id.* A trial court that fails to properly abide by a mandate abuses its discretion. *McFadin v. Broadway Coffeehouse, LLC*, 539 S.W.3d 278, 283 (Tex. 2018).

The meaning of a judgment is a question of law courts determine de novo. *See Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003). Courts construe judgments by applying the same rules of interpretation applicable to written instruments generally. *Freightliner Corp. v. Motor Vehicle Bd. of Tex. Dep't of Transp.*, 255 S.W.3d 356, 363 (Tex. App.—Austin 2008, pet. denied) (citing *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex. 1971)). We

look first and foremost to the text of the judgment and, if it is unambiguous, we must give effect to the literal language used. *In re Piatt Servs. Int'l, Inc.*, 493 S.W.3d 276, 281 (Tex. App.—Austin 2016, orig. proceeding [mand. denied]) (citing *Shanks*, 110 S.W.3d at 447). In doing so, we construe the judgment as a whole to give effect to every part. *Id.*

The Andersons focus their arguments on the text of this Court's judgment, but the Supreme Court's mandate requires the district court to enforce the high court's judgment. *See Texas Health & Human Servs. Comm'n v. El Paso Cty. Hosp. Dist.*, 351 S.W.3d 460, 472 (Tex. App.—Austin 2011), *aff'd*, 400 S.W.3d 72 (Tex. 2013) (discussing district court's "mandatory, ministerial duty under the supreme court's mandate to give effect to the high court's judgment"); *see also* Tex. R. App. P. 18.1 ("The clerk of the appellate court that rendered the judgment must issue a mandate in accordance with the judgment[.]"). The high court's judgment provides: "[The Andersons] shall recover, and [the Archers] shall pay, the costs incurred in this Court and the court of appeals." The judgment unambiguously awards the Andersons the costs they incurred in this Court and the Texas Supreme Court, but no others. As with other written instruments, we may not add to the judgment under the guise of interpreting it. *Cf. URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 770 (Tex. 2018) ("[C]ourts cannot rewrite the parties' contract or add to or subtract from its language." (quoting *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 242 (Tex. 2016)). Moreover, the Andersons do not assert that the award of costs "incurred in this Court and the court of appeals" includes their receivership costs or is ambiguous on that point. We conclude that the judgment, construed a whole, does not award the Andersons their receivership costs.

The Andersons would be no more successful if this Court's judgment was controlling. Our judgment directed the Archers to "pay all costs relating to this appeal, both in

6

this Court and the court below." The Andersons contend that "costs relating to this appeal" necessarily includes the disputed receivership costs because we rendered the judgment the district court should have rendered. *See* Tex. R. App. P. 43.2(c) (providing that court of appeals may "reverse the trial court's judgment in whole or in part and render the judgment that the trial court should have rendered"). However, appellate costs usually consist of the costs for preparing the appellate record and any filing fees charged by the court of appeals. *See id.* R. 51.1(a) (providing those costs must be included in statement of costs); *see also Harris Cty. Children's Protective Servs. v. Olvera*, 971 S.W.2d 172, 177 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) ("On appeal, costs include[:] (1) the filing fees paid to the clerk of the court of appeals, (2) the fee paid to the trial-clerk for the preparation of the clerk's record; and (3) the fee paid to the court reporter for preparation of the reporter's record."). The clerk of this Court issued a statement of costs in the previous appeal taxing those costs and no others. Nothing in the judgment indicates that we awarded the Andersons any additional monies. *See County of El Paso v. Dorado*, 180 S.W.3d 854, 873 (Tex. App.—El Paso 2005, pet. denied) (noting that costs for purposes of Rule 43.4 "are those items in the clerk's bill of costs" (citing *Pitts v. Dallas Cty. Bail Bond Bd.*, 23 S.W.3d 407, 417 (Tex. App.—Amarillo 2000, pet. denied))).

We hold that the district court's order determining costs did not violate the Texas Supreme Court's mandate because the Andersons did not recover their receivership costs on appeal.[3] We overrule the Andersons' appellate issues.

---

[3] As an alternative, the Andersons contend the law of the case doctrine bars the trial court from revising the issue of court costs. Under that doctrine, "a decision rendered in a former appeal of a case is generally binding in a later appeal of the same case." *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 182 (Tex. 2012). We do not address this argument because we have concluded the Andersons did not recover their receivership costs on appeal. *See* Tex. R. App. P. 47.1 (directing appellate courts to "hand down a written opinion that

**The Archers' Cross-Appeal**

The Archers initially argue that the district court's order determining costs is void because the court's earlier orders adjudging costs had become final. In the alternative, the Archers contend that attorney's fees are not "costs" and that it is inequitable to require them to pay any receivership costs under the circumstances.

We consider first whether the district court's previous orders adjudging the receivership costs are final judgments. "[T]he term 'final,' as applied to judgments, has more than one meaning." *Sultan v. Mathew*, 178 S.W.3d 747, 751 (Tex. 2005) (quoting *Street v. Honorable Second Court of Appeals*, 756 S.W.2d 299, 301 (Tex. 1988) (orig. proceeding)).

> A judgment is 'final' for purposes of appellate jurisdiction if it disposes of all issues and parties in a case. The term 'final judgment' is also used with reference to the time when trial or appellate court power to alter the judgment ends, or when the judgment becomes operative for the purposes of res judicata.

*Id.* (quoting *Street*, 756 S.W.2d at 301). While there generally can be only one final and appealable judgment in a case, *see Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001), the Texas Supreme Court has held that a trial court's order resolving "a discrete issue in connection with any receivership has the same force and effect as any other final adjudication of a court, and thus, is appealable," *Huston v. F.D.I.C.*, 800 S.W.2d 845, 847 (Tex. 1990). The Court justified departing from its one-final-judgment rule because "[t]here must be some finality to orders which dispose of discrete issues or controverted questions by which the parties are going to be bound." *Id.* at 848. The Archers contend these same considerations require us to hold the trial court's orders are final for purposes of the court's plenary power.

---

is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal").

"Plenary power" refers to "the court's power to dispose of any matter properly before it." *West Travis Cty. Pub. Util. Agency v. CCNG Dev. Co.*, 514 S.W.3d 770, 775 n.3 (Tex. App.—Austin 2017, no pet.) (quoting *WMC Mortg. Corp. v. Starkey*, 200 S.W.3d 749, 751 (Tex. App.—Dallas 2006, pet. denied)). A court's power to modify its judgment while it retains plenary power is "virtually absolute." *See id.* (citing *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 295 (Tex. App.—Dallas 2009, no pet.)). Any judicial action taken after plenary power expires, in contrast, is void. *See In re Elizondo*, 544 S.W.3d 824, 829 (Tex. 2018) (orig. proceeding). The trial court's plenary power lasts a minimum of thirty days after a final judgment is signed. *See* Tex. R. Civ. P. 329b(d). In some cases, plenary power may extend up to an additional seventy-five days. *See id.* R. 329b (c), (e), (g).

The Archers ask us to apply the plenary-power rules to receivership proceedings, but those rules are designed to prevent trial courts from reopening litigation after fully disposing of all the issues before it. *See Bahar v. Lyon Fin. Servs.*, 330 S.W.3d 379, 387 (Tex. App.—Austin 2010, pet. denied) ("The very purpose of limiting a trial court's plenary power over a proceeding is to foreclose the possibility of a suit continuing indefinitely even though a final judgment has been obtained." (quoting *Malone v. Hampton*, 182 S.W.3d 465, 470 (Tex. App.—Dallas 2006, no pet.))). This is inconsistent with post-judgment receiverships, which are ongoing proceedings to enforce a judgment. *See Mitchell v. Turbine Res. Unlimited*, 523 S.W.3d 189, 196 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("Texas has long recognized the independent and ongoing nature of receivership proceedings."). "Unlike plenary power, which generally only lasts for thirty days after final judgment, a trial court's post-judgment enforcement powers 'can last until the judgment is satisfied.'" *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co.*, 540 S.W.3d 577, 581 (Tex. 2018) (quoting *Black v. Shor*,

9

443 S.W.3d 170, 176 (Tex. App.—Corpus Christi 2013, no pet.)). A court that appoints a receiver to assist with enforcement thus retains "continuing jurisdiction and control" over the receiver and receivership property until concluding the proceeding. *See Bowman v. The Bank of N.Y. Mellon Tr. Co.*, No. 05-13-01684-CV, 2016 WL 258765, at \*4 (Tex. App.—Dallas Jan. 21, 2016, pet. denied) (mem. op.) (citing *Pratt v. Amrex, Inc.*, 354 S.W.3d 502, 504–05 (Tex. App.—San Antonio 2011, pet. denied)). This authority includes modifying the court's previous orders to respond to new circumstances. *See Hill*, 460 S.W.3d at 764 ("[A]t least as long as the main case is on appeal, the trial court has jurisdiction to appoint, control, modify, or otherwise deal with a receivership related to the main case."); *see also Bishop v. Smith*, No. 09-08-00185-CV, 2009 WL 5205362, at \*4 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.) (affirming trial court's modification of order specifying how receiver would receive compensation when original arrangements proved unworkable). Once the need for the receivership has passed, the trial court has power to "conduct proceedings necessary to conclude the receivership and discharge the receiver," *Hill*, 460 S.W.3d at 763, including, if necessary, the power to modify its previous orders, *see Chimp Haven, Inc. v. Primarily Primates, Inc.*, 281 S.W.3d 629, 633 (Tex. App.—San Antonio 2009, no pet.) (holding trial court properly modified order discharging receiver to retain jurisdiction to dispose of receivership property). The finality considerations cited by the Archers do not warrant departing from this well-established body of law. We conclude the district court retained authority to modify its orders adjudging costs and, as a result, the order determining costs is not void.[4] *See Jones v. Strayhorn*,

---

[4] We stress that our holding refers to the trial court's power to modify its orders and does not relieve parties of the need to timely appeal orders rendered in connection with a receivership. *Cf. Bahar v. Lyon Fin. Servs.*, 330 S.W.3d 379, 386–87 (Tex. App.—Austin 2010, pet. denied)

321 S.W.2d 290, 293–95 (Tex. 1959) (reviewing order apportioning costs of receivership rendered after Texas Supreme Court rendered judgment in underlying case); *see also Bishop*, 2009 WL 5205362, at *4.

The next issue is whether the court properly included the award of attorney's fees as costs.[5] The Archers insist the term "costs" does not include attorney's fees, while the Andersons contend that the district court had statutory authority to include them as costs. This argument raises an issue of statutory interpretation, which presents a question of law we review de novo. *Chambers-Liberty Ctys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019). Courts construe statutory terms according to their ordinary meaning "unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results." *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018).

Section 31.007 provides in relevant part:

> (b) A judge of any court may include in any order or judgment all costs, including the following:
>
> > (1) fees of the clerk and service fees due the county;
> >
> > (2) fees of the court reporter for the original of stenographic transcripts necessarily obtained for use in the suit;
> >
> > (3) masters, interpreters, and guardians ad litem appointed pursuant to these rules and state statutes; and

---

(holding we lacked appellate jurisdiction over portion of amended turnover order that reproduced text of prior order that was not appealed).

[5] The Archers also argue the district court erred by treating the percentage of the receiver's fees and expenses paid by Mark as court costs. They do not dispute a receiver's fees and expenses are ordinarily court costs, *e.g.*, *Hill*, 460 S.W.3d at 767, but contend they lose that status if imposed as sanctions. The Archers cite no support for their argument, and we are aware of none.

11

> (4) such other costs and fees as may be permitted by these rules and state statutes.

Tex. Civ. Prac. & Rem. Code § 31.007(b). "Costs," when used in legal proceedings, "is generally understood [to mean] the fees or compensation fixed by law collectible by the officers of court, witnesses, and such like items, and does not ordinarily include attorney's fees which are recoverable only by virtue of contract or statute." *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 175 (Tex. 2013) (orig. proceeding) (quoting *Johnson v. Universal Life & Acc. Ins.*, 94 S.W.2d 1145, 1146 (Tex. [Comm'n App.] 1936)). The Texas Supreme Court has interpreted "costs" in Section 31.007(b) to bear the same meaning. *Id.* at 176. However, subsection 31.007(b)(4) permits inclusion of "costs" allowed by other statutes. The district court awarded the Archers their attorney's fees under subsection 31.002(e), which provides that a judgment creditor who successfully obtains relief under that statute "is entitled to recover reasonable costs, including attorney's fees." *See* Tex. Civ. Prac. & Rem. Code § 31.002(e). We conclude that subsection 31.007(b)(4) permitted the district court to award attorney's fees as costs under subsection 31.002(e). *See id.* § 31.007(b)(4).

Finally, the Archers argue that the district court abused its discretion by requiring them to bear any cost associated with the receivership. We review an order under Rule 141 assessing costs against the successful party for "good cause" for an abuse of discretion. *Furr's Supermarkets v. Bethune*, 53 S.W.3d 375, 376 (Tex. 2001). Good cause under Rule 141 "is an elusive concept that varies from case to case," but typically means "that the prevailing party unnecessarily prolonged the proceedings, unreasonably increased costs, or otherwise did something that should be penalized." *See id.* at 376–77.

12

In its order, the district court set out its reasons for not ordering the Archers to pay all costs associated with the receivership:

1. On December 20, 2013, the Court sustained Plaintiffs' contest to Defendants' net worth in the amount of $1,078,908;

2. The Court found that Defendants' net worth affidavit was not credible and did not accurately set out the assets of the Estate of Ted M. Anderson;

3. On December 20, 2013, the Court enjoined Defendants from disbursing estate funds, except for the payment of normal recurring expenses;

4. Peggy Anderson, Defendants' mother, filed bankruptcy, and on May 21, 2014, the Bankruptcy Court granted Plaintiffs' emergency motion to lift the stay to the extent it applied to the appeal of the Final Judgment in the above styled cause against Defendants, and, with some limitations, to collection actions by Plaintiffs against the Estate of Ted M. Anderson;

5. On July 17, 2014, the Court granted sanctions against T. Mark Anderson for disbursing $75,000 from the Estate of Ted M. Anderson in violation of Court's prior Order;

6. On July 17, 2014, the Court appointed a Receiver; and

7. On August 20, 2014, the Court awarded sanctions against T. Mark Anderson for his refusal to turn over all property of the Estate of Ted M. Anderson to the Receiver[.]

The Archers contend the district court should have required the Andersons to bear all receivership costs because the Archers acted in good faith to preserve their rights. While trial courts may consider "the bona fides of the unsuccessful claimant" when deciding which party shall pay costs, that factor "is by no means controlling." *See Jones*, 321 S.W.2d at 293. On the other hand, the ultimate success or failure of the party that requested the receiver is "a prime factor in determining who shall ultimately pay the costs of the receivership." *Id.* The Texas Supreme Court has also stressed that a "[r]eceivership is one of the harshest remedies known to the law," and the party "who invoked the remedy must be prepared to assume some risk[.]" *Id.*

at 294; *see Perry v. Perry*, 512 S.W.3d 523, 527 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("The appointment of a receiver is a harsh, drastic, and extraordinary remedy, which must be used cautiously."). After considering the entire record, the ultimate outcome of the litigation, and the district court's findings of good cause, we conclude the district court did not abuse its discretion in requiring the Archers to pay half the receivership costs. *See Jones*, 321 S.W.2d at 294 (affirming order requiring party that invoked receivership but lost underlying case on appeal to pay all receivership costs). We overrule the Archers' appellate issues.

## CONCLUSION

We affirm the district court's order determining costs.

_____
Edward Smith, Justice

Before Chief Justice Rose, Justices Kelly and Smith

Affirmed

Filed: November 21, 2019

14